# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SHANNON N. SWAIN, )
                                 )
            **Plaintiff,**       )
                                 )
v.                                   )       Case No. CIV-17-64-SPS
                                 )
COMMISSIONER of the Social    )
Security Administration,           )
                                 )
            **Defendant.**       )

## OPINION AND ORDER

The claimant Shannon N. Swain requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born January 22, 1980, and was thirty-five years old at the time of the administrative hearing (Tr. 25, 158). She completed eighth grade, and has past relevant work as a stocker and CNA (Tr. 18). The claimant alleges inability to work since August 1, 2012, due to post-traumatic stress disorder (PTSD), depression, and past mental and physical abuse (Tr. 182).

**Procedural History**

On August 27, 2013, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Jeffrey S. Wolfe conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 22, 2015 (Tr. 9-20). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), except that she was limited to only occasional bending, stooping, kneeling, and crouching; and no climbing ladders, ropes, or scaffolds. Additionally, he found she was limited to simple unskilled work, and refraining from all but infrequent contact with the general public. He clarified that she may work in proximity to co-workers,

but should refrain from working as a team member of collaboratively, such that completion of her work is dependent upon the work of her co-workers (Tr. 14). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the economy, *i. e.*, maid, bench assembler electrical, and laundry sorter (Tr. 19).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly weigh the opinion of her treating psychiatrist, Dr. Edward Melton, and (ii) in accounting for all of her impairments, which affected the jobs identified at step five. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The ALJ determined that the claimant had the severe impairments of back pain, PTSD, and major depressive disorder, as well as the non-severe impairments of agoraphobia and irritable bowel syndrome (Tr. 11). The relevant medical evidence relevant to the claimant's mental impairments demonstrates that the claimant was regularly treated at CCOM medical, where notes indicate the claimant had a long history of PTSD, along with "some depression issues and no suicidal plan" (Tr. 340). She was referred for further mental health treatment (Tr. 340, 355).

The claimant presented for mental health outpatient treatment with Green Country Behavioral Health Services, Inc., on October 17, 2013 (Tr. 316). Intake notes reflect that her symptoms included depression, anxiety, irritability, mood swings, nightmares, and flashbacks, that she endorsed auditory/visual hallucinations for the past six to seven years,

-4-

and that she reported issues with concentration and focus and an inability to sit still (Tr. 319). Her mood/affect was cooperative but flattened (Tr. 319). She was assessed with PTSD (Tr. 330). On January 24, 2014, a note states that the claimant had been off her medications for two months, and she had continued complaints of depression, anxiety, and insomnia (Tr. 372). She had a sad, restricted affect, and the treatment provider noted that the claimant continued to struggle to obtain a complete and optimal response to currently prescribed treatment (Tr. 372).

The claimant also received treatment from Edward Melton, M.D., at the Oklahoma Neuropsychiatric Institute. In August 2013, he assessed her with major depressive disorder of moderate severity, as well as PTSD (Tr. 419). Treatment notes indicate that she was at times "a little worse" and at times "a little better" through 2014 (Tr. 413-417, 478-481). However, in 2015, notes reflect she was consistently "a little worse," her mood was frequently described as irritable, and her anxiety was noted to have increased (Tr. 473-477). On August 8, 2014, Dr. Melton completed a mental RFC assessment in which he indicated that the claimant was markedly limited in eight areas, including the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 425-426). Additionally, he found that the claimant was moderately limited in the remaining twelve areas, including

the ability to work in coordination with or proximity to others without being distracted by them, and the ability to respond appropriately to changes in the work setting (Tr. 425-426).

On August 6, 2015, Dr. Melton wrote a letter to the claimant, indicating that her diagnoses were PTSD, panic disorder with agoraphobia, and bipolar disorder (Tr. 564). He further stated that, due to the claimant's history of trauma and isolation that led to anxiety and deep depression, she was "kept from seeking opportunities to keep [herself] employable[,]" and that multiple terminations from employment due to poor attendance is also reflective of this. He further stated that she could not attend regularly at any workplace due to her chronic and severity level of agoraphobia (Tr. 564).

State reviewing physician Joseph Kahler, Ph.D., reviewed the record and found that the claimant was markedly limited in the ability to interact appropriately with the general public, and that she was moderately limited in the ability to carry out detailed instructions, and maintain attention and concentration for extended periods (Tr. 89-90). He concluded that she could perform simple repetitive tasks in a familiar setting with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she was unable to relate to the general public and that she would work best in a setting with consistent job tasks and expectations (Tr. 90). On reconsideration, W.F., Ph.D. agreed that the claimant was markedly limited in the ability to interact appropriately with the general public, but found she was moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting (Tr. 104-105). Dr. W.F. then concluded that the claimant could perform one- to three-step tasks in a familiar setting with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she was unable to relate to the general public and would work best in a setting with consistent job tasks and expectations (Tr. 105). The only difference in the two opinions, then, is that Dr. Kahler found the claimant could perform simple repetitive tasks while Dr. W.F. found the claimant could perform one- to three-step tasks (Tr. 90, 105).

The claimant asserts that the ALJ erred in formulating her RFC, particularly with regarding to Dr. Melton's treating neuropsychiatrist opinions, and the Court agrees. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is

supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted].

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record, including Dr. Melton's two provided opinions. The ALJ took pains to recite an OB/GYN treatment notation in which the claimant did not report sleep problems, anxiety, behavioral changes, etc., but did not discuss any of Dr. Melton's treating notes, including his descriptions of the claimant's condition (Tr. 16). He then found the claimant not credible, in part because she missed an appointment and did not refill a prescription, but was able to travel to Arkansas to get married (Tr. 16). The ALJ assigned "some weight" to the opinions of the state reviewing physicians, finding that they were supported by unidentified evidence and explanation (Tr. 16-17). Although the ALJ made no mention that the majority of the state reviewing physician assessment is a "check-box" assessment, the ALJ pointed out that Dr. Melton's mental RFC assessment was, and further summarized his August 2015 letter. He then noted that Dr. Melton "only" saw the claimant twenty minutes per month, and determined on his own that she had not kept a regular schedule with Dr. Melton because she once went two months without medication (Tr. 17). He then found that Dr. Melton's opinions were not supported by

evidence or explanation, and were inconsistent with the claimant's activities including shopping, travel, and socializing. He also gave little weight to Dr. Melton's statement that the claimant could not work, because that is an issue reserved to the Commissioner (Tr. 17). Ultimately, he determined that the claimant was not disabled.

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians. The ALJ erred in failing to conduct the requisite analysis with regard to Dr. Melton's treating physician opinion in the record. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it to Dr. Melton's treating records and opinion. First, the ALJ's opinion failed to take into account that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005). *See also Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("[A] psychological opinion does not need to be based on 'tests;' those findings can be based on 'observed signs and symptoms.' Dr. Houston's observations of Ms. Wise do constitute specific medical findings."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004), *citing* 20 C.F.R. Subpt. P, app. 1 § 12.00(B). Furthermore, the ALJ's assessment was improper because he appeared to adopt the findings of the state reviewing physicians but failed to explain why he did not consider the consistent treatment records indicating that the claimant had continued problems even when on her medications, including irritability and anxiety. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing*

*Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984). This is also problematic because it indicates that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments but focused on times when exams had more positive results (or were not conducted by mental health professionals at all, when he relied on a one-time notation from the claimant's OB/GYN) and ignored the times when the record reflected decompensation. 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.").

Finally, although an ALJ is not required to give controlling weight to an opinion that the claimant could not return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he *is required* to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527, specifically in relation to functional limitations. Instead, the ALJ simply stated that it was an issue reserved to the Commissioner, without applying the appropriate consideration to the opinion. *See Langley,* 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.").

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**